UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 02-30596-WS |
| WILLIAM A. RANKIN and SHIRLEY A. RANKIN, | Chapter 7 |
| Debtors. | Hon. Walter Shapero |
| _____/ | |
| WILLIAM A. RANKIN and SHIRLEY A. RANKIN, | Adv. Pro. No. 04-3044 |
| Plaintiffs. | |
| vs. | |
| JOEL R. DAULT, individually, PROGRESSIVE TITLE INSURANCE AGENCY COMPANY, a Michigan corporation, and COMMONWEALTH LAND TITLE INSURANCE, a foreign corporation, | |
| Defendants. | |
| _____/ | |

**OPINION GRANTING DEFENDANT COMMONWEALTH LAND TITLE
INSURANCE'S MOTION FOR SUMMARY JUDGMENT**

I. Introduction

This matter is before the Court upon a complaint filed by William A Rankin and Shirley A.

Rankin (who are proceeding in pro per), the Debtors in this Chapter 7 case ("Plaintiffs"), alleging

breach of a fiduciary duty. The complaint seeks actual and punitive damages from Joel R. Dault,

individually, Progressive Title Insurance Agency Company ("Progressive Title"), and

Commonwealth Land Title Insurance.[1] Defendants filed a motion to dismiss and for summary judgment. Plaintiffs filed a response. The Court held and concluded a hearing and took the motions under advisement. For the reasons set forth in this opinion, the Court grants Defendants' motion for summary judgment.

The Court took some evidence at the hearing for the primary purpose of determining the existence and extent of any issues of any material fact which might preclude either dismissal or the granting of summary judgment. The herein recited facts are those taken in a light most favorable to plaintiffs, as is required in such situations. Many of these same facts are also relevant to essentially concurrent proceedings involving a motion by the Trustee to approve a compromise settlement of an adversary proceeding involving the same transaction which is at the core of this adversary proceeding - the Court having approved that compromise settlement on this date. The parties have in effect consented to the factual findings incident to approval of the compromise settlement being considered by the Court in its disposition of these matters as well.

## II. Facts and Procedural Posture

These matters arise from Debtors' efforts to remain at property, used as their residence, located at 10982 E. Charring Cross Circle in Whitmore Lake, Michigan. Debtors had lived at this address since October of 1997 and were occupying it as vendees under a land contract from Paul and Karla Woods ("Woods"). In 1999, Debtors fell behind on their land contract payments, and on June 26, 2000, the Woods secured a judgment of possession against Debtors requiring payment of an

---

[1] All references to the Bankruptcy Code in this opinion are to the Bankruptcy Code as it existed prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. This is because the Debtors filed their chapter 7 case prior to October 17, 2005, the effective date of that Act.

amount in excess of $22,000 to reinstate the land contract. Debtors failed to timely pay that amount and on February 4, 2002, the Woods were awarded possession of the property.

In an effort to retain possession of the home Debtors negotiated with the Woods for an outright purchase of the property and it is Debtors' position that such an agreement was reached and incident thereto Debtors arranged for a new mortgage to finance that purchase. According to the testimony of Paul Wood, the agreed upon purchase price for the home was $285,000.00, plus payment of past due sums under the land contract by Plaintiffs totaling $14,000.00.

Shortly after reaching the agreement, the Woods were notified by Plaintiffs' mortgage broker, Federal Mortgage, that the Plaintiffs had arranged for financing in order to complete the purchase. On February 1, 2002, Progressive Title received a request from Federal Mortgage to provide a (mortgage) title insurance commitment for a refinance transaction for the property. The title commitment was prepared and issued to Federal Mortgage. Plaintiffs assert, without support, they "received" a title commitment as well.

On or about February 7, 2002, Federal Mortgage asked Progressive Title to perform escrow closing services for the transaction, and issued closing instructions shortly thereafter. Progressive Title prepared the closing documents, including a land contract pay-off statement and settlement statement pursuant to the instructions it received from Federal Mortgage.

On February 11, 2002, Plaintiffs appeared at Federal Mortgage's office to sign the necessary documents in order to complete the purchase of the home. Joel Dault represented Progressive Title at this meeting. Plaintiffs signed a number of documents, including a settlement statement, and a disclaimer acknowledging that Progressive Title was hired to conduct the closing and issue title insurance to the lender and owed no obligation to the Plaintiffs.

On February 12, 2002, Federal Mortgage instructed Progressive Title to amend the settlement statement to add $10,000.00 to be paid (apparently by Plaintiffs) to P.C. Law Center, which appears to be some sort of fee or expense payable by the Rankins related to the closing. That change along with other things not changing had the effect of that much less being paid the Woods at closing, which was not acceptable to the Woods. That lead to Plaintiffs having to come up with an additional $10,000 "out of pocket" to pay in cash at closing, or out of the $286,000 mortgage proceeds.

On February 13, 2002, the Woods signed a Warranty Deed and delivered it to Progressive on the express condition that Progressive Title hold it in escrow until: (1) the written purchase and closing documents, including an agreed upon closing statement were fully executed, and (2) the full amounts due the Woods were available. After signing the deed, the Woods refused to sign the amended pay-off statement, because they believed as amended it showed payment to them of less than the agreed upon amount.

On February 14, 2002, $286,000.00 was wired by the mortgagee to be to Progressive Title to hold in escrow for disbursement upon consummation of the transaction. On the same day, Federal Mortgage informed Mr. Wood that the Plaintiffs did not have enough money to complete the transaction, and wished to lower the purchase price in order to be able to close the sale, such arising at least in part from the referred to additional $10,000.

Later in the day on February 14, 2002, Federal Mortgage offered the Woods a second mortgage on another piece of property owned by the Plaintiffs to secure a deferred payment to the Woods of the closing cash shortfall. Woods then informed Federal Mortgage that was unacceptable and they did not intend to go through with the sale due to the closing funds shortfall.

-4-

On February 20, 2002, the Woods sent a facsimile to Progressive Title confirming that they did not intend to close the sale of the house. On or about March 1, 2002, Progressive Title wired $286,000.00 back to Federal Mortgage.

On February 21, 2002, the Plaintiffs filed a their Chapter 7 Bankruptcy Petition. On January 4, 2004, Plaintiffs, acting pro se filed a complaint in Oakland County Circuit Court against Defendants. The complaint stated multiple claims, including breach of fiduciary duty, "breach of closing," credit defamation, breach of contract and guaranty, fraud as to Joel Dault, "pierce the corporate veil," and mental distress. Essentially, Plaintiffs allege that the agreed upon purchase price was $280,000.00, that they secured a mortgage of $286,000.00, and that Defendants' (negligent or intentional) actions lead to the transaction's failure to close.

On February 27, 2004, the Chapter 7 trustee filed a Notice of Removal of the state court action to United States Bankruptcy Court. On February 17, 2004, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rule 7012, for failure to state a claim upon which relief can be granted. On April 17, 2004, Defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) and Bankruptcy Rule 7056. Dault filed an affidavit in support of both motions. Plaintiffs did not respond to either motion, nor did the trustee. Instead, Plaintiffs (not the trustee) filed an amended complaint (without first seeking leave from the Court, or receiving the Court's approval pursuant to Federal Rule of Civil Procedure 15 and Federal Rule of Bankruptcy Procedure 15) on April 18, 2004.[2]

On April 20, 2004, Plaintiffs (not the trustee) filed an "Answer to Affidavit of Joel R. Dault,"

---

[2] The amended complaint states several claims, including breach of fiduciary duty, "cause of action for money had and received," misrepresentation, negligence, breach of contract and guaranty, and fraud.

which appears to be a response to Defendants' motion for summary judgment. Plaintiffs failed to cite any legal authority in their response. On April 28, 2004, Plaintiffs filed a response to Defendants' motion to dismiss relying on their "Answer to Affidavit of Joel R. Dault."

On May 3, 2004, Defendants filed a motion to strike Plaintiffs' amended complaint. Plaintiffs responded to the motion to strike. For the purposes of this opinion, the Court will treat the amended complaint as properly filed, and address Defendants' summary judgment motion in light of the amended complaint.[3]

## III. Standard

Defendants contend that all Counts should be dismissed or, in the alternative, that their Motion for Summary Judgment should be granted, because Plaintiffs have not and cannot introduce any evidence that will prove any Count of their Complaint. Defendants also contend that there are no material facts at issue.

Plaintiffs' response (in writing and at the hearing) to Defendants' motion for summary judgment fails to address the missing prima facia elements for each claim.

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056(c).

---

[3] It would appear that virtually all of the events giving rise to the Complaint in this case occurred prior to the Bankruptcy filing on February 21, 2002. The original complaint was filed in state court in 2004, and was removed by the trustee to this Court soon thereafter. If so, on its face it would appear this proceeding is or was at the date of the bankruptcy case filing arguably a cause of action belonging to the debtors which became bankruptcy estate property. It is however being pursued by the debtors individually. An argument can be made that the debtors have no standing and that it is a cause of action with respect to which only the trustee to pursue or abandon (in which case Debtors would be able to pursue it) or otherwise deal with. Aside from the removal the trustee has taken little or no part in these proceedings and does not appear to have formally abandoned it. Given that for whatever reasons the standing issue appears not to have been raised or seriously pursued, the Court is proceeding to decide the matter on its presented merits.

Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Reiger, 150 F.2d 561, 566 (6th Cir. 1998) (quoting Anderson, 447 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Group v. Rockwell International Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." Id. (citing Anderson, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. Berryman v. Reiger, 150 F.2d 561, 566 (6th Cir. 1998) (citing Anderson, 447 U.S. at 256).

## IV. Analysis

### A. The Complaint

Plaintiffs' Amended Complaint alleges six counts, including: (I) Breach of Fiduciary Responsibility to the Purchaser/Mortgagor; (II) For Money Had and Received; (III) Misrepresentation and Negligence; (IV) Breach of Contract and Guaranty; (V) Fraud - Joel R.

Dault/Progressive Title Insurance Agency; and (VI) Fraud - Commonwealth Land Title Insurance. In order for the Plaintiffs to prevail on Count I and III,[4] they must prove that Defendants owed a duty to Plaintiffs. See Graphic Directions v. Bush, 862 P.2d 1020, 1022 (Ct of App. Col. 1993) (The court held that in order to recover on a claim for breach of fiduciary duty, the plaintiff must prove that defendant was acting as plaintiff's fiduciary and that defendant breached a fiduciary duty owed to the plaintiff.). In order for Plaintiffs to prevail on the other counts, they need prove that Defendants owe them a duty. See Eerdmans v. Maki, 226 Mich. App. 360 (1997) (The court held that to establish a cause of action for fraud or misrepresentation, a plaintiff must prove six elements, none of which are that the defendant owed a duty); American Parts Co., Inc. v. American Arbitration Ass'n, 8 Mich. App. 156, 166 (1967) (The court held that the elements for a breach of contract cause of action do not include a duty owed.)[5]

B.   Defendants Owed No Duty to Plaintiffs

Count I and Count III both require Plaintiffs to show, as an element, that Defendants owed Plaintiffs a duty of care. In Michigan, "The existence or non-existence of a legal duty . . . is ascertained through examination of the existing relationship between the parties." Ruiz v. Cristo Rey Community Center, 709 F.2d 1507 (6th Cir. 1983). In each case, the trier of fact must determine after reviewing the evidence, whether a duty is owed.

---

[4] Count III (For Money Had and Received) is not recognized as a cause of action under Michigan law. However, Plaintiffs incorporate all previous paragraphs from Count I (Breach of Fiduciary Duty) in this paragraph, and claim that Defendants breached some sort of duty. Therefore, the Court will address this count along with Count I.

[5] The parties have not argued or drawn distinctions (if indeed there are any to be drawn) between any duties owed or not owed Plaintiffs by one Defendant or another and therefore the Court has not done so.

04-03044-dof    Doc 303    Filed 09/08/06    Entered 09/11/06 14:58:04    Page 8 of 14

Defendants in this case, as title insurance underwriters, do not purport to act as anything other than insurance companies. Unlike a title agent whose scope is limited to the issuance of a title commitment for the title insurer, a title insurance company merely acts as an underwriter for the insurance policy to be issued and has no involvement with document preparation, closing purchase or mortgage transactions, and has no or limited interaction with the title agent or potential insured prior to issuance of the commitment. In that regard, a commitment comprises of a statement of the terms and conditions upon which the title insurer is willing to issue its title policy. Culp Construction Co. v. Buildmart Mall, 795 P.2d 650 (Utah 1990). On the other hand, the title insurance policy is a contract between the insured and the insurer, and construction of the insurance contract is a matter of law. Chicago Title Ins. Co. v. Huntington Nat'l Bank, 87 Ohio S.T.3d 270 (1999). A title insurer does not purport to act as anything other than an insurance company, in its traditional sense. The relationship between a title insurer and the insured is essentially contractual, and the end result of the relationship between the title company and the insured is the issuance of the policy. The issuance of the policy of title insurance merely confirms the obligations already undertaken by the title company in its commitment.

In Greenberg v. Stewart Title Guaranty Co., 171 Wis.2d 485 (1992), the title company's policy provides:

> . . . not services, but a policy of insurance. That policy appropriately limits the rights and duties of the parties. From this perspective, the insured expects that in consideration for payment of the premium, it will receive a policy of title insurance. The insurer's expectation is that in exchange for the premium it will insure against certain risks subject to the terms of the policy.

Id. at 492. The court held that consequently, only a title insurer and the insured, as identified on the commitment, are bound by the terms and conditions of the title policy issued.

-9-

A title insurer must only issue a policy in conformance with the recited terms and conditions of the commitment, and possesses an unqualified right to select the risks it is willing to underwrite. Aronoff v. The Lincoln Co., 618 A.2d 669, 686 (D.C. App. 1992). A title company can determine the terms and conditions of any policy it issues and enters into. Id. Neither a title insurer nor its agent can be found liable in negligence arising out of their issuance of a title commitment or policy. Greenberg, 171 Wis.2d at 521-22. Rather, a title insurer may only be held liable in accordance with the terms of the policy.

Consequently, in this case, Defendants merely have duty to insure in conformity with the recited terms and conditions of the tile policy issued. However, because no title commitment or policy was issued to Plaintiffs, no agreement exists between these parties. Absent an agreement, Defendants owe no duty of care to Plaintiffs.

Plaintiffs have introduced no evidence in their pleadings, or at the evidentiary hearings identifying why or in what way Defendants owed Plaintiffs a duty of care. In other words, Plaintiffs have not come forward with any legal support of factual allegations which would establish that Defendants owed any duty to Plaintiffs. There is no basis under common law, case law, or statute establishing any duty between the parties. Therefore, summary judgment is appropriate in connection with Counts I and III of Plaintiff's amended complaint.

C.      Plaintiffs Cannot Prove the Necessary Elements in Order to Prevail on Any of the Counts

Plaintiffs essentially allege that Defendants committed four separate legal wrongs, including: (1) Defendants had a duty to transfer the escrow funds; (2) a duty to convey; (3) a duty to record the warranty deed regardless of the other facts (i.e., Plaintiffs provided insufficient funds at closing); and (4) Defendants had a duty to advise the Plaintiffs at an earlier point that the sellers had refused

-10-

to consummate the sale. Plaintiffs pleaded these allegations throughout their amended complaint and the various counts.

1. Plaintiffs Have Not Met Their Burden For Proving Negligence

In order to prove negligence, Plaintiffs must prove four elements: (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached that duty, (3) that the defendant's breach was a proximate cause of the plaintiff's injuries, and (4) that the plaintiff suffered damages. Pettis v. Nalco Chemical Co., 150 Mich. App. 294 (1986) (citing Warner v. General Motors Corp., 137 Mich. App. 340, 357 (1984). The existence of a duty is a question of law for the court to decide. Girvan v. Fuelgas Co., 238 Mich. App. 703, 711 (1999). If no legal duty exists, then no actionable negligence occurred. Munson v. Vane-Stecker, 347 Mich. 377, 392 (1956).

In this case, Plaintiffs clearly failed to show that a duty was owed, and that Defendants' breach proximately or actually caused any injury that may have occurred (and may have failed to show that there was a breach of any duty or that they suffered any actual and foreseeable damages). Regarding causation, the Court finds that the transaction fell through because of Plaintiffs' actions, not Defendants. Plaintiffs failed to produce the agreed upon and sufficient funds to close the transaction. Even if Defendants are to blame for improperly withholding the funds or failing to record the deed (which the Court does not find), the transaction could still not be completed without Plaintiffs providing the requested and agreed upon funds to meet the selling price. In other words, Plaintiffs cannot now argue or (more importantly) prove that without Defendants' "breach," Plaintiffs would not have completed the transaction. Plaintiffs cannot prove this because they were to blame for the transaction's ultimate demise.

Even if the Plaintiffs' could prove that Defendants caused the transaction to fail, they cannot

-11-

show that Defendants owed them a legal duty. Joel Dault and Loretta Ross both testified (and were supported by the exhibits) that Progressive Title was retained by the mortgage company to act as a closing agent, and to issue a title insurance policy for the benefit of the mortgage company only in the event that title to the property was transferred. Defendants were not responsible for ensuring the completion of the transfer. There is simply no basis in law or in fact for finding that Defendants' owed a duty of care to Plaintiffs.

    2.    Plaintiffs' Fraud and Misrepresentation Claims Must Also Fail

Federal Rule of Civil Procedure 9(b), as adopted by Bankruptcy Rule 7009 states "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In order to satisfy the Rule 9 requirements, a party must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud." Coffey v. Foamex L.P., 2 F.3d 157, 161-62 (6th Cir. 1993). A party's allegations must satisfy Rule 9(b)'s particularity requirement with regard to each element of the claim of fraud and with regard to each defendant against whom fraud is alleged. Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co., 940 F. Supp. 1101, 1114 (W.D. Mich. 1996).

In this case, Plaintiffs have failed to meet the higher clear and convincing standard of proof for each element of fraud. In order to succeed on a claim of fraud, Plaintiffs must show that (1) Defendant made a material misrepresentation, (2) that was false, (3) when Defendant made the representation he knew that it was false, or made it with reckless disregard as to its truth and as a positive assertion, (4) made with the intention that Plaintiffs act upon it, (5) Plaintiffs actually act in reliance upon the representation, and (6) Plaintiffs suffer an injury as a result. Papin v. Demski,

17 Mich. App. 151 (1969).

Plaintiffs have not and cannot prove these elements at a trial. They have not even identified a single material representation of fact made by Dault, nor have they shown that any such representation was false, that Dault knew it was false, that they relied upon the statement, or that Dault intended them to rely upon the statement. Moreover, Plaintiffs have not even alleged facts that could eventually lead to an issue of fact regarding fraud.

In support of Plaintiffs' fraud claim, Plaintiffs simply in conclusory fashion state that Dault lead Plaintiffs to believe that a successful closing had taken place. It appears to the Court, that Plaintiffs misunderstood the situation. They do not provide any support, whether or not through direct testimony, of any statements or documents that were relied upon. Further, Plaintiffs' own statements and the evidence introduced at the hearing contradict any fraud claim. At the time Plaintiffs signed their paperwork, Ross was aware of Plaintiffs' lack of funds. Ross, acting as Plaintiffs' agent, was attempting to negotiate a price reduction to meet Plaintiffs' unilaterally agreed price. Moreover, at the time Plaintiffs signed the documents, Dault was unaware of the lack of funds, or any of the other looming problems with the transaction. Therefore, even if Dault made generalized statements regarding the transaction's likely success, at the time, such statements would not have been known as false or misleading. The Court finds that summary judgement in favor of Defendants is appropriate with regard to Plaintiffs' fraud and misrepresentation claims, because no material facts are at issue which could lead to Plaintiffs prevailing on a fraud claim at trial.

## V. Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment as to all Counts is GRANTED.

The Court will enter an appropriate order.

**Entered: September 08, 2006**

       /s/ Walter Shapero     

**Walter Shapero**
**United States Bankruptcy Judge**
